UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN QUINTERO, | |
| Plaintiff, | 3:13-cv-00008-MMD-VPC |
| v. | **REPORT AND RECOMMENDATION** |
| JACK PALMER, *et al*., | **OF U.S. MAGISTRATE JUDGE** |
| Defendants. | October 3, 2014 |

Before the court is plaintiff's motion for leave to file a third amended complaint (#46)[1] in a case concerning plaintiff's civil rights. The action was referred by the Honorable Miranda M. Du, United States District Judge, to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules IB 1-4. For the reasons discussed below, the court recommends that plaintiff's motion for leave to file a third amended complaint be granted, but that he be allowed to proceed on only seven of its thirteen claims.

## I.  FACTUAL & PROCEDURAL BACKGROUND

Plaintiff John Quintero ("plaintiff"), proceeding *pro se*, is an inmate at the Northern Nevada Correctional Center ("NNCC"). On January 4, 2013, plaintiff filed several claims regarding conditions at NNCC against defendants, each of whom is an official at NNCC or the Nevada Department of Corrections ("NDOC"). (#1). Two of plaintiff's seven original claims pertained to alleged violations of rights held by fellow NNCC inmates, Dirk Klinke and Kevin Pope. On July 1, 2013, the District Court issued a screening order, pursuant to 28 U.S.C. § 1915A. (#7). Therein, the Court ordered the Clerk to file plaintiff's complaint, severed the claims relating to Klinke and Pope,

---

[1] Refers to the court's docket numbers.

-1-

and also dismissed without prejudice count III of the complaint for failure to state claim. (#17 at 14). At that time, the court stayed the case for ninety days to allow for an early mediation conference between plaintiff and defendants. The parties were unable to settle. (#11).

On December 5, 2013, plaintiff filed his first amended complaint ("FAC"). (#18). In the FAC, plaintiff added several allegations to count I, which alleges that defendants have refused to allow inmate led religious services and thereby have restricted plaintiff's free exercise of religion in violation of the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (#18 at 7). Similarly, plaintiff added additional allegations to count II's First Amendment and RLUIPA claims, which pertain to alleged threats defendants made to plaintiff in response to his written letters to a local Catholic bishop. (#18 at 8).

In a restyled count III, the FAC alleges free exercise and due process violations for defendants' failure to provide certain language books and media to plaintiff, which he sought for theological study. (#18 at 9-10). Counts IV and V concern defendants' alleged violations of plaintiff's First Amendment rights through certain mailroom procedures at NNCC. (#18 at 11-12). Finally, the FAC added a new claim, count VI, in which plaintiff alleges a denial of his right to free religious exercise "if" he is ever assigned to certain units at NNCC. (#18 at 13). Defendants did not oppose the FAC.

Plaintiff sought leave, on March 26, 2014, to file a second amended complaint ("SAC"). (#30). Defendant timely opposed. (#31). The SAC changed the names of the parties and included a few additional factual allegations (#30 at 7-10). Defendants contended that plaintiff failed to attach an amended pleading as required by Local Rule 15-1(a). (#31 at 2). On May 7, 2014, the court granted plaintiff's motion, as his filing contained an amended pleading as required by the Rule. (#35).

In his present motion, plaintiff seeks leave of the court to amend his complaint for a third time. Counts I-VI of the third amended complaint ("TAC") are unchanged from plaintiff's second amended complaint. Instead, the purpose of the TAC is to add seven new claims. (#46 at 15-26). Defendants ask the court to deny plaintiff's motion for leave on two grounds. First, regarding counts VII-X, defendants argue futility because plaintiff fails to state claims upon which relief may be granted. Second, regarding counts XI-XIII, defendants state that plaintiff has not exhausted available administrative remedies. (#49 at 1-2).

## II.  LEGAL STANDARDS

### A.    Amended Pleadings.

Courts in the Ninth Circuit "should liberally allow a party to amend its pleading." *Sonoma Cnty. Ass'n of Ret. Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing, *inter alia*, Fed. R. Civ. P. 15(a)). But the court's "discretion to deny the motion is particularly broad where, as here, a plaintiff previously has been granted leave to amend." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999). "Courts may decline to grant leave to amend only if there is strong evidence of . . . futility of the amendment . . . ." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (internal quotation omitted). An amendment is futile when it is legally insufficient, *Miller v. Rykoff-Sexon, Inc.*, 845 F.3d 209, 214 (9th Cir. 1988), or "where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). When refusing to grant leave, the court must justify its reasoning. *Leadsinger, Inc. v. BMG Music Publ'g*, 513 F.3d 522, 532 (9th Cir. 2008) ("An outright refusal to grant leave to amend without a justifying reason is . . . an abuse of discretion.") (citing *Foman*, 371 U.S. at 182).

### B. Pleading Sufficiency.

The Federal Rules of Civil Procedure require that pleadings, including amended complaints, provide "a short and plain statement" that shows the party is entitled to the relief sought. Fed. R. Civ. P. 8(a)(2). Although a complaint need not contain "detailed factual allegations," it must allege sufficient facts to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible only where the court can reasonably infer the defendant is liable for the misconduct alleged. *Id.* When reviewing for sufficiency, the court accepts factual allegations as true. *See id.* Nevertheless, the pleading must have basis in a cognizable legal theory. *Chubb Custom Ins. Co. v. Space Systems/Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

The court must take particular care when reviewing the pleadings of a *pro se* party, for a more forgiving standard applies to litigants not represented by counsel. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010). The court is to "construe *pro se* filings liberally . . . and to 'afford the petitioner the benefit of any doubt.'" *Id.* Despite the leniency afforded to *pro se* plaintiffs, the complaint must allege facts sufficient to support each element of the claims, and the court need not accept as true conclusory allegations, unwarranted deductions, or unreasonable inferences. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

### C. Section 1983 and Exhaustion Under the PLRA.

42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Stated simply, the statute is a vehicle to vindicate deprivations of civil rights provided by the United States Constitution and federal law. Claims under § 1983 require the plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official who acts under the color of

state law. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Incarcerated plaintiffs are subject to an additional exhaustion requirement. Under the Prisoner Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

"[A]pplicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Administrative remedies provided by such grievance procedures "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524. PLRA exhaustion requires that prisoners take "all steps the [state] agency holds out . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). It "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Inmate plaintiffs are required to exhaust only "available" remedies, and a remedy is available when, as a practical matter, it is capable of use. *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005).

Failure to exhaust is an affirmative defense under the PLRA, and the defendant bears the burden of proving that the inmate plaintiff has not exhausted his available administrative remedies. *Jones*, 549 U.S. at 216. Therefore, inmates are not required to specifically plead or demonstrate exhaustion in their complaints, and the defendant typically must raise the issue in a responsive pleading. *Id.* Yet "[i]n the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

### III. DISCUSSION

The court has reviewed plaintiff's TAC and its seven additional claims and concludes that nearly all of the claims are futile. As described below, counts VII, VIII, and X state insufficient claims for relief, and plaintiff has not properly exhausted counts XI, XII and XIII. Count IX fails to state a colorable equal protection claim, but sufficiently alleges a plausible due process claim. Accordingly, the court recommends granting plaintiff leave to file a third amended complaint for the limited purpose of adding count IX.

**A.    Count VII.**

Count VII claims violations of plaintiff's Fourteenth Amendment due process rights and his right to petition for the redress of grievances under the First Amendment's Petition Clause. (#46 at 15). Defendants allegedly failed to observe various steps in the NDOC prison grievance procedures, including meeting in-person with plaintiff to discuss a grievance he had filed. (#46 at 15).

Prisoners have the right to access the prison grievance system, as constitutionally-protected access to the courts often turns on accessing and exhausting the grievance process. *Lewis v. Casey*, 518 U.S. 343, 348 (1996). However, the Ninth Circuit has long held that inmates lack a constitutional right to any specific procedures in a state-created prison grievance system. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.3d 639, 640 (9th Cir. 1988). "[B]ecause inmates have no constitutional right to a prison grievance system, the actions of the prison officials in reviewing [the plaintiff's] internal appeal cannot create liability under § 1983." *Ramirez*, 334 F.3d at 860.

Consistent with *Ramirez* and *Mann*, courts in this district have routinely rejected inmate complaints about NDOC grievance procedures and the handling of specific grievances. *See, e.g.*, *Ratcliff v. Rowley*, No. 3:14-cv-00087-MMD-VPC, 2014 WL 3928611, at *2 (D. Nev. Aug. 12,

2014) ("Plaintiff has no constitutional right to an effective grievance procedure."); *Bradberry v. Nev. Dep't of Corrs.*, No. 3:11-CV-00668-RCJ-VPC, 2013 WL 4702953, at *17 (D. Nev. Aug. 20, 2013) ("A prison official's review and denial of an inmate's grievances, without more, cannot serve as the basis for liability under 42 U.S.C. § 1983."); *Clark v. Guerrero*, No. 2:09-cv-00141-JCM-PAL, 2012 WL 6485082, at *6 (D. Nev. Aug. 8, 2012) ("failure to follow administrative procedures does not create a claim for relief under 42 U.S.C. § 1983."); *Ellis v. Benedetti*, No. 3:08-CV-00657-ECR (WGC), 2012 WL 3638718, at *7 (D. Nev. May 14, 2012) ("there is no constitutional right to a prison administrative appeal or grievance system."). Therefore, accepting plaintiff's allegations as true, count VII fails to state a legally cognizable due process claim under the Fourteenth Amendment. Plaintiff has no constitutional right that requires defendants to honor any particular step prescribed by the NDOC grievance process.

Similarly, plaintiff does not state a cognizable claim under the First Amendment. Prisoners have a right under the Petition Clause to file grievances, *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2005), and "[t]he 'government' to which the First Amendment guarantees a right of redress of grievances includes the prison authorities . . . ." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223 (2001). Yet the Supreme Court has explained that the Petition Clause "is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). "The right to petition allows citizens to express their ideas, hopes, and concerns to their government . . . [it] is generally concerned with expression directed to the government seeking the redress of a grievance." *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2495 (2011) (emphasis added).

*McDonald* and *Guarnieri* thus clarify that the Petition Clause protects *expression*—the capacity of citizens, including prisoners such as plaintiff, to articulate and communicate with government actors. The right renders liable retaliatory acts that chill or deter inmates from enjoying this form of expression. *See, e.g.*, *Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) (discussing First Amendment protection from retaliation for filing prison grievances); *Brodheim*, 584 F.3d at 1269.  But the right to petition imposes no requirement upon prison officials to respond to plaintiff's complaints in a particular way, whether substantively or procedurally.  *See Smith v. Ark. State Highway Emps.*, *Local 1315*, 441 U.S. 463, 465 (1979) ("the First Amendment does not impose any affirmative obligation on the government to listen . . . ."); *see also We the People Found., Inc. v. United States*, 485 F.3d 140, 141 (D.C. Cir. 2007) ("the Petition Clause does not provide a right to a response or official consideration [of a grievance]."); *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1237 (10th Cir. 2007) ("the right to petition confers no attendant right to a response from the government.").

Accordingly, the Petition Clause does not require defendants to adhere to any particular step of the NDOC grievance process.  Instead, the Clause requires only that defendants refrain from retaliating against plaintiff for grieving about prison conditions and other matters.  Plaintiff does not allege that prison officials are chilling or retaliating against him for filing grievances. Therefore, plaintiff has failed to articulate a cognizable claim under the Petition Clause.  These claims would be subject to dismissal under Rule 12(b)(6), *Chubb Custom Ins. Co.*, 710 F.3d at 956, and count VII is therefore futile.  *Steckman*, 143 F.3d at 1298.  The Court should accordingly decline to grant leave to plaintiff to pursue this count.  *Sonoma Cnty.*, 708 F.3d at 1117.

**B.     Count VIII.**

Count VIII alleges interference with plaintiff's right to access the courts, in violation of the First, Fifth, and Fourteenth Amendments. (#46 at 17). Plaintiff avers that defendants unlawfully adopted an exact-cite paging system for legal books and references. (#46 at 17). Remarkably, count VIII makes no suggestion that that the paging system has interfered with plaintiff's legal claims.

As the Ninth Circuit has explained, the Supreme Court roots the right to access courts at times in the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments, and at others in the First Amendment's Petition Clause. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013). In either case, the right to access courts does not guarantee to prisoners a freestanding right to a prison law library or other forms of legal assistance. *Lewis*, 518 U.S. at 350. Legal resources are merely "the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). A constitutional violation arises only where the means inadequately facilitate the constitutionally-protected end.

Because "meaningful access to the courts is the touchstone, . . . the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351. Courts in this district and also the Ninth Circuit have found various forms of exact-cite paging systems to be constitutionally infirm. *E.g. Toussaint v. McCarthy*, 801 F.2d 1080, 1109-10 (9th Cir. 1986), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Koerschner v. Warden*, 508 F. Supp. 2d 849, 857-61 (D. Nev. 2007) (considering exact-cite systems at NDOC's Ely State Prison and Lovelock Correctional Center). However, such systems are not unconstitutional *per se*; whether a prison's paging systems infringes upon an inmate's right to access the courts is a fact-specific inquiry. *See Felix v.*

*McDaniel*, No. 3:09-cv-00483-LRH-WGC, 2012 WL 666742, at *5-8 (D. Nev. Feb. 29, 2012) (distinguishing *Koerschner* and observing that the constitutional inquiry is fact specific); *Aparicio v. McDaniel*, No. 3:07-cv-00427-LRH-VPC, 2012 WL 1079055, at *13 n.41 (D. Nev. Mar. 30, 2012) (clarifying that *Koerschner* did not "establish that all paging systems in place at all times in Nevada state prisons are constitutionally inadequate"). Hence, in a § 1983 action predicated on a prison law library's paging system, a colorable claim exists only where the plaintiff alleges "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Nev. Dep't of Corrs. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (quoting *Lewis*, 518 U.S. at 349). Ultimately, the inmate must show that the paging system has "frustrated a claim." *Id.*

The court is mindful that it must "construe the pleadings liberally and . . . afford plaintiff the benefit of any doubt." *Hebbe*, 627 F.3d at 623 (internal quotation and citation omitted). Yet plaintiff has failed to allege an injury as required by *Lewis*. Further, he does not suggest—even remotely—that NNCC's paging system has harmed or interfered with a present or contemplated legal claim. Thus, there is nothing from which the court can reasonably infer injury. At core, plaintiff's allegations in count VIII are generalized complaints about the paging system. Without a hint of injury, plaintiff's allegations are a "threadbare recital[] of the elements of a cause of action . . . ." *Iqbal*, 556 U.S. at 679. The claim is therefore subject to dismissal under Rule 12(b)(6) and is futile. *Steckman*, 143 F.3d at 1298. Accordingly, the court recommends that plaintiff be denied leave to pursue this count. *Sonoma Cnty.*, 708 F.3d at 1117.

### C.   Count IX.

Plaintiff asserts in count IX that defendants have violated the Fourteenth Amendment by removing privacy curtains from plaintiff's cell, and also prohibiting plaintiff and other inmates from

removing their shirts in the exercise yard, a privilege that inmates enjoyed in the past. Defendants interpret this count as stating claims only under the Equal Protection Clause (#49 at 5), but the court understands plaintiff's allegation about the privacy curtains to more strongly assert a violation of his right to privacy under the Due Process Clause.

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Generally, "[t]o state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). The preliminary inquiry is identifying the plaintiff's relevant class, which must be "comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (internal quotation omitted).

The Fourteenth Amendment's Due Process Clause also proscribes state infringement upon the certain rights, absent the government's showing of a sufficient interest. The Supreme Court has recognized that due process includes a right to privacy. *Whalen v. Roe*, 429 U.S. 589, 599 (1977). In the Ninth Circuit, prisoners enjoy a limited right to bodily privacy, as "[s]hielding one's unclothed figure from the view of strangers . . . is impelled by elementary self-respect and personal dignity." *Michenfelder v. Sumner*, 860 F.2d 328, 333-34 (9th Cir. 1988). In the prison context, these rights are subject to limitations imposed by legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Yet the burden of articulating penological interests rests on the government, and therefore such infringements of a prisoner's rights, if well plead, usually should survive at the pleading stage.

Although plaintiff's equal protection claims are futile, his due process claim is sufficient plead. With respect to defendants' alleged actions, plaintiff has articulated no factual basis to make plausible an equal protection claim. No allegations indicate that Plaintiff is treated differently than any other inmate at NNCC with respect to the exercise yard policy and privacy curtains. Without sufficient factual basis to infer differential treatment from other prisoners, plaintiff's claim is not plausible on its face. *Iqbal*, 556 U.S. at 679. Yet plaintiff has a constitutionally-protected interest in shielding his nude body from unwanted and wandering eyes. *Michenfelder*, 860 F.3d at 333-34. Plaintiff references "voyeurism" and prison rape in count IX (#46 at 19), and the court liberally interprets these statements as expressing plaintiff's concern about his bodily privacy. Although defendants may be able to demonstrate that prison officials removed the curtains for a legitimate penological interest, the court finds that plaintiff's allegations state a plausible claim at the pleading stage. As dismissing this claim would be improper, the court recommends that plaintiff be granted leave to file his amended complaint to allow pursuit of this count's due process theory.

**D.     Count X.**

As the court understands count X, plaintiff claims a violation of the First Amendment's Establishment Clause. (#46 at 20).[2] Specifically, plaintiff contends that defendants have established a "civil religion" of "deprivation theory" at NNCC. (#46 at 20). Plaintiff asserts this religion is based upon moral judgments of the executive branch and the Nevada Legislature. Further, certain alleged acts of defendants—namely, any and all violations of prisoners' constitutional rights—are the religion's "ceremonial rituals." (#46 at 20). Defendants' purported constitutional violations,

---

[2] Plaintiff's TAC also references the Equal Protection Clause of the Fourteenth Amendment (#46 at 20), but in light of the theory the court explains, plaintiff's reference to the Fourteenth Amendment likely relates only to the predicate violation necessary under his First Amendment theory. Count X lacks any facts remotely suggesting an equal protection issue. (*See* #46 at 20-21). Accordingly, if plaintiff intended to also assert a Fourteenth Amendment claim in this count, the court finds that it lacks sufficient factual allegations to make the claim plausible on its face. *Iqbal*, 556 U.S. at 678.

here the alleged removal of various files from plaintiff's records, are therefore religious acts forbidden by the Establishment Clause.

As an initial matter, Establishment Clause claims require that a government actor engages in some kind of "religious" act. Although determining which acts are "religious" under the First Amendment can be a "notoriously difficult, if not impossible, task[,]" *Alvarado v. City of San Jose*, 94 F.3d 1223, 1227 (9th Cir. 1996), courts in the Ninth Circuit consider three factors when determining whether a particular set of beliefs constitutes religion. *See Prentice v. Nev. Dep't of Corrs.*, No. 3:09-cv-0627-RJC-VPC, 2010 WL 4181456, at *3 (D. Nev. Oct. 19, 2010); *Connor v. Tilton*, No. C 07-4967 MMC (PR), 2009 WL 4642392, at *7 (N.D. Cal. Dec. 2, 2009).

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Alvarado*, 94 F.3d at 1229 (citing *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981)). Courts necessarily consider these factors because "[f]ew governmental activities could escape censure under a constitutional definition of 'religion' which includes any symbol or belief to which an individual ascribes 'serious or almost-serious' spiritual significance. If anything can be religion, then anything the government does can be construed as favoring one religion over another, and the government is paralyzed." *Id.* at 1230 (internal punctuation and quotation omitted).

Count X is futile. Even accepting its allegations as true, plaintiff makes insufficient factual contentions to plausibly establish that the "deprivation theory" is a religion for the purpose of the Establishment Clause. Plaintiff's allegations underscore that this putative religion deals solely with correctional issues, rather than "fundamental and ultimate questions having to do with deep and imponderable matters." *Id.* at 1229. Similarly, plaintiff's threadbare allegations provide no facts from which the court can reasonably infer that the putative religion is a comprehensive "belief

system," rather than a set of narrow, isolated correctional techniques. *Id.*; *Iqbal*, 556 U.S. at 678. Further, plaintiff articulates no factual basis to support his intimation that defendants personally adhere and act in accordance with this supposed faith in carrying out their responsibilities at NNCC and the NDOC.

The First Amendment "must be held to protect unfamiliar and idiosyncratic as well as commonly recognized religions, [but] it loses its sense and thus its ability to protect when carried to the extreme proposed by the plaintiff[]." *Alvarado*, 94 F.3d at 1230. Plaintiff's theory is novel, but ultimately untenable, for it seeks to transform each and every constitutional tort that might occur at NNCC into an Establishment Clause violation. That reading of the First Amendment is simply absurd. Absent substantial allegations to make the claim plausible, the claim is futile. *Steckman*, 143 F.3d at 1298. The Court should deny leave as to this count. *Sonoma Cnty.*, 708 F.3d at 1117.

### E. Counts XI-XIII.

In count XI, plaintiff alleges an equal protection violation under the Fourteenth Amendment relating to defendants' refusal to remove covers from secular hardcover books and limiting sources for correspondence courses. (#46 at 22-23). Count XII alleges that defendants, in imposing new limitations on meeting spaces for inmates, have violated plaintiff's rights to equal protection and free exercise under the Fourteenth and First Amendments. (#46 at 24-25). Finally, count XIII asserts that defendants unlawfully conspired to deprive plaintiff of his constitutional rights by implementing operational features of high security prisons at the medium security NNCC, in violation of the Equal Protection Clause and also 42 U.S.C. § 1985. (#46 at 25-26).

Within the TAC, plaintiff lists the grievance number related to each of his thirteen counts. (#46 at 29). Plaintiff lists no grievance numbers for counts XI and XIII, and no response to count XII. Regarding the occurrences giving rise to count XII, plaintiff states that he filed but withdrew

the grievance because prison officials indicated they were working to address his underlying complaints. (#46 at 24). Apparently, defendants have not yet resolved the issue to plaintiff's satisfaction. (#46 at 24).

Plaintiff should not be allowed to proceed on counts XI-XIII because it is plain from the face of the amended complaint that he has not exhausted administrative remedies. Inmates must exhaust available administrative remedies prior to bringing a civil rights action in federal court. *Brown*, 422 F.3d at 936-37. A remedy is available when it is capable of use. *Id.* at 937. Although it is "the defendant's burden . . . to prove that there was an available administrative remedy," *Albino*, 747 F.3d at 1172, it is apparent that grievance procedures are available at NNCC and plaintiff simply has not opted to use them. His decision is a plain violation of the PLRA. 42 U.S.C. § 1997e(a); *Porter*, 534 U.S. at 524. Because the TAC makes plaintiff's failure to exhaust apparent, a motion to dismiss these counts would be well-taken. *Albino*, 747 F.3d at 1166. The court recommends that plaintiff be denied leave to pursue these claims at this time.

### IV. CONCLUSION

Although the Federal Rules liberally favor amendment, the Court has discretion to deny leave to amend where the proposed amendment would add futile claims. As discussed, the seven claims plaintiff seeks to add to this litigation are futile in near uniformity, even after liberally construing the claims and accepting plaintiff's factual allegations as true. Because plaintiff states one plausible claim, count IX, the court recommends that plaintiff's motion for leave to file a third amended be granted for the limited purpose of pursuing that count's due process theory.

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.

These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECCOMENDED** that plaintiff's motion for leave to file a third amended complaint (#46) be **GRANTED**. The Clerk should **FILE** the third amended complaint.

**IT IS FURTHER RECCOMENDED** that counts I, II, III, IV, V, VI and IX, insofar as count IX states a claim based upon the Fourteenth Amendment's right to privacy, remain in this action. Plaintiff will be allowed to proceed on these seven counts.

**IT IS FURTHER RECCOMENDED** that counts VII and X be **DISMISSED WITH PREJUDICE**. These claims are no longer part of the action.

**IT IS FURTHER RECCOMENDED** that counts VIII, XI, XII, and XIII be **DISMISSED WITHOUT PREJUDICE**. These claims are no longer part of the action.

**DATED:** October 3, 2014.

*/s/ Valerie P. Cooke*

_____
**UNITED STATES MAGISTRATE JUDGE**