UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN QUINTERO,<br><br>　　　　　　　Plaintiff,<br>　v.<br>JACK PALMER, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 3:13-cv-00008-MMD-VPC<br><br>ORDER ACCEPTING AND ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE VALERIE P. COOKE |

**I.    SUMMARY**

Before the Court is the Report and Recommendation of United States Magistrate Judge Valerie P. Cooke (ECF No. 224) ("R&R") resolving three motions brought by Plaintiff John Quintero: motion to alter or amend the judgment ("Motion to Amend") (ECF No. 212), motion for transcripts of settlement conferences (ECF No. 218), and motion for evidentiary hearing (ECF No. 219). The Court has reviewed Plaintiff's objection ("Objection") (ECF No. 226), Plaintiff's supplement to his Objection ("Supplemental Objection") (ECF No. 227), and Defendants' response to Plaintiff's Objection ("Response") (ECF No. 230). For the reasons discussed below, the Court accepts and adopts the R&R in its entirety.

In addition, since the issuance of the R&R, Plaintiff has filed a motion to enforce the settlement agreement ("Motion to Enforce") (ECF No. 228). After review of the Motion to Enforce, Defendants' response (ECF No. 233), Plaintiff's reply (ECF No. 234), and Plaintiff's supplemental reply (ECF No. 235), the Court finds that Plaintiff has not

demonstrated that NDOC has failed to meet its obligations under the settlement agreement. The Court therefore denies Plaintiff's Motion to Enforce.

## II. BACKGROUND

Plaintiff, proceeding pro se and *in forma pauperis*, is an inmate in the custody of Nevada Department of Corrections ("NDOC") and is currently housed at Northern Nevada Correctional Center ("NNCC") in Carson City. After amending his complaint several times, Plaintiff filed his Fourth Amended Complaint pursuant to 42 U.S.C. § 1983 to assert a variety of claims, including alleged violations of Plaintiff's First and Fourteenth Amendment rights as well as Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (*See* ECF No. 105.) The relevant background facts, which the Court adopts, are set out in the R&R. (*See* ECF No. 224 at 1-2.)

In February 2016, the parties participated in a settlement conference before the Magistrate Judge and reached resolution on a settlement agreement ("Settlement Agreement") to resolve this case. (ECF No. 189.) The Court subsequently granted the parties' stipulation of dismissal on May 6, 2016. (ECF No. 207.) At issue in Plaintiff's various motions and upon which the Magistrate Judge made her recommendation is whether the Court should amend the judgment to allow Count X, which the parties had agreed to dismiss with prejudice (ECF No. 200), to go forward. (ECF No. 212 at 1.)

## III. PLAINTIFF'S OBJECTIONS TO R&R

### A. Legal Standard

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a

1  magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection."). Thus, if there is no objection to a magistrate judge's recommendation, then the court may accept the recommendation without review. *See, e.g., Johnstone*, 263 F. Supp. 2d at 1226 (accepting, without review, a magistrate judge's recommendation to which no objection was filed).

In light of Plaintiff's Objection, the Court conducts a *de novo* review to determine whether to adopt the R&R.

### B.   Jurisdiction

In the R&R, the Magistrate Judge first considers whether this Court has jurisdiction to address Plaintiff's pending motions (ECF Nos. 212, 218 and 219). (ECF No. 224 at 2-3.) Plaintiff filed the Motion to Amend (ECF No. 212) four days before filing notice of an appeal of this Court's dismissal order (ECF No. 213). Under Federal Rule of Appellate Procedure 4(a)(4), a notice of appeal becomes effective only upon entry of an order disposing of the Rule 59(e) motion. *Miller v. Marriott Int'l Inc.*, 300 F.3d 1061, 1063-64 (9th Cir. 2002). The Magistrate Judge therefore correctly found that the Court has jurisdiction to consider the Motion to Amend and related motions.

### C.   Motion to Amend

Plaintiff asks the Court to amend the judgment to allow Count X to proceed. In Count X, Plaintiff challenged NDOC's policy of allowing inmates to possess religious hardcover books without their covers but otherwise banning all secular hardcover books. (ECF No. 105 at 21-22.) Plaintiff contends that Defendants made certain misrepresentations during the settlement conference in order to "trick" him into agreeing to dismiss Count X with prejudice. (ECF No. 212 at 2.)

Although not mentioned in the Federal Rules of Civil Procedure, motions for reconsideration may be brought under Rules 59(e) and 60(b).[1] Rule 59(e) provides that any motion to alter or amend a judgment shall be filed no later than 28 days after entry of the judgment. The Ninth Circuit has held that a Rule 59(e) motion for reconsideration should not be granted "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). Specifically, under Rule 59(e), a court may alter or amend a judgment: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Thus, a motion for reconsideration must set forth the following: (1) some valid reason why the court should revisit its prior order; and (2) facts or law of a "strongly convincing nature" in support of reversing the prior decision. *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003).

Plaintiff has not presented a valid reason for the Court to amend the judgment. The Court will address the pertinent grounds for not amending the judgment under Rule 59(e).

**1.   Newly Discovered or Previously Unavailable Evidence**

This Court agrees with the Magistrate Judge's finding that evidence about a prior settlement agreement between NDOC and Prison Legal News ("PLN Agreement") does

---

[1] The Magistrate Judge addressed both Rules 59(e) and 60(b) despite the fact that only Rule 59(e) was mentioned in the motion's caption. (ECF No. 224 at 5.) The Court agrees with the Magistrate Judge's discussion of both rules but chooses to analyze the motion under only Rule 59(e)'s framework, as the Motion to Amend was brought within the required 28-day timeframe.

4

not constitute "new evidence" that would justify reconsideration of the court's order dismissing Count X. (ECF No. 224 at 6.) Under Rule 59(e), the moving party must demonstrate that the "evidence was discovered after the judgment, that the evidence could not be discovered earlier through due diligence, and that the newly discovered evidence is of such a magnitude that had the court known of it earlier, the outcome likely would have been different." *Dixon v. Wallowa Cnty.*, 336 F.3d 1013, 1022 (9th Cir. 2003).

Plaintiff alleges that Defendants misrepresented the effect of the PLN Agreement by informing Plaintiff that it required NDOC to ban all hardcover books, including both religious and secular ones, which induced him to settle Count X. (ECF No. 212 at 2-3, 8.) Plaintiff cites to an unpublished Ninth Circuit decision, *Ashker v. Schwarzenegger*, 339 Fed. Appx. 751 (9th Cir. 2009), holding that a blanket ban on hardcover books is unconstitutional to allege that the failure of Defendants to provide a full copy of the PLN Agreement before settlement negotiations amounted to a lack of notice of previously unavailable evidence. (ECF No. 226 at 6.)

The Court is unsure how the PLN Agreement would constitute new evidence discovered after the settlement or the order of dismissal. Plaintiff did not discover the PLN Agreement after the settlement agreement was finalized; rather, he was informed of its existence and its supposed content at the time of negotiations. Plaintiff chose to continue the negotiations instead of asking for the opportunity to review the PLN Agreement and/or requesting to continue with the negotiations at a later point in time.

In addition, Plaintiff appears to suggest that because Defendants allegedly stated there would be an eventual ban on all hardcover books under the PLN Agreement, Defendants made a misrepresentation to Plaintiff that *Ashker* had been overturned. (*See id.* at 12.) The Magistrate Judge properly found a lack of evidence that Defendants somehow tricked Plaintiff into settling. Moreover, the *Ashker* decision is unpublished and therefore not binding precedent; unpublished decisions are binding on the parties to the case but cannot be cited as authority. 9TH CIR. R. 36-3(a) ("Unpublished dispositions

5

and orders of [the Ninth Circuit Court of Appeals] are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."). Therefore, Plaintiff's reliance on *Ashker* is misplaced.

### 2.  Manifest Errors of Law or Fact Upon Which the Judgment Rests

Because the *Ashker* decision does not establish that a prison's policy to ban all hardcover books is unconstitutional,[2] the Court's acceptance of the stipulation does not amount to a "manifest error of law." (*See* ECF No. 226 at 6.) Additionally, Plaintiff does not allege that Defendants expressly told him that *Ashker* was no longer "good law." (*See* ECF No. 212 at 2.) The real crux of Plaintiff's Motion to Amend is that he himself misunderstood why Defendants may have mentioned the PLN Agreement's alleged future ban on all hardcover books — i.e., instead of realizing that *Ashker* did not amount to controlling law that Defendants were required to comply with, Plaintiff assumed that the case had been overturned and that NDOC was, as a result, banning all hardcover books because it had become constitutionally permissible (which it currently is[3]). The Court therefore agrees with the Magistrate Judge's finding that Plaintiff waived any potential constitutional claim he could have brought against an all-out ban on hardcover books when he settled this case.

### 3.  Manifest Injustice

Manifest injustice exists where there is a flaw in the court's decision that without correction would lead to inequitable results. *See In re Bunting Bearings Corp.*, 321 B.R. 420, 423 (N.D. Ohio 2004).

Here, the Court accepted the stipulation agreed upon by the parties that dismissed Count X with prejudice. The Settlement Agreement does not amount to an unconstitutional waiver of Plaintiff's rights; rather, the Settlement

---

[2]As noted, the unconstitutionality of the book ban at issue in *Ashker* applies only to that case.

[3]Currently, neither the Ninth Circuit nor the Supreme Court has published a decision making a prison's ban on all hardcover books unconstitutional.

6

1  Agreement amounts to a waiver of the right to pursue a claim that *may* have been
2  successful on constitutional grounds. Further, the facts as alleged by Plaintiff fail to show
3  that Plaintiff waived the ability to pursue Count X because of some affirmative
4  misrepresentation on the part of Defendants. Rather, the waiver appears to stem from
5  Plaintiff's own misunderstanding of the import of the *Ashker* decision. This Court
6  therefore agrees with the Magistrate Judge's finding that there was no manifest injustice
7  requiring an alteration of the judgment.

### 4. Intervening Change in Controlling Law

Additionally, there has been no intervening change in controlling law that would require this Court to amend or alter the Court's order of dismissal because there has been no published Ninth Circuit or Supreme Court case law establishing that a prison's all-out ban on hardcover books is unconstitutional.

The Court therefore accepts the Magistrate Judge's recommendation to deny Plaintiff's Motion to Amend.

### D. Motions for Transcripts from Settlement Conference and Evidentiary Hearing

Plaintiff also requests transcripts of the settlement conferences held on August 25, 2015, and February 23, 2016 (ECF No. 218), as well as an evidentiary hearing on the Motion to Amend (ECF No. 219). Taking Plaintiff's allegations concerning what Defendants said about the PLN Agreement during the settlement negotiations as true, these facts do not support Plaintiff's contention that Defendants affirmatively misrepresented the constitutionality of an all-out ban on hardcover books. Plaintiff's motions for transcript and for evidentiary hearing are therefore denied.

## IV. MOTION TO ENFORCE

Plaintiff contends that Defendants have "abdicated" their "rights" to enforce the terms of the Settlement Agreement. (ECF No. 228 at 2.) However, Plaintiff's allegations do not show that Defendants have failed to comply with the terms of the Settlement Agreement. The Court therefore denies Plaintiff's Motion to Enforce.

## A. Settlement Agreement

The Settlement Agreement requires NDOC to fulfill seven obligations: (1) pay Plaintiff a total of $500 that must be deposited into two separate trust accounts within 30 days of filing the stipulation to dismiss the case; (2) allow Quintero to apply to the Religious Review Team ("RRT") for a plot of land in the outdoor religious site at NNCC and require that Warden Baca not oppose the application; (3) require that letters from inmates to ordained clergy volunteers be considered personal mail and therefore subject to Administrative Regulation ("AR") 750; (4) revise Operational Procedure ("OP") 722, implement this revision within 30 days of the settlement conference or before March 23, 2016, and include in the revision a remedial measure to address instances where an inmate's initial request for law library materials is not filled by the inmate law clerks or if those clerks misunderstand the request; (5) create eleven identical binders to be disseminated throughout NNCC, with each unit bubble receiving a binder, and Plaintiff must be consulted before the binder is finalized and distributed; (6) permit NDOC staff to assist Plaintiff if he is engaged in an approved education class that requires testing to be completed in front of proctors, although no staff member is required to proctor the test; and, (7) reinstate Alcoholics Anonymous ("AA") meeting times in the Chapel schedule with separate meeting times for English participants and for Spanish participants, but NDOC requires that a non-inmate volunteer lead these meetings or otherwise the meetings will not occur. (ECF Nos. 199-1 at 4-7, 228 at 17-20.)

Section IV of the Settlement Agreement provides as follows with respect to jurisdiction for future enforcement actions:

> In the event that QUINTERO feels that the NDOC is not living up to its end of the bargains contained herein and wishes to institute an enforcement action, QUINTERO may, for the next two years from the date this Agreement is *fully executed*, make a motion to the Court to reopen the instant case number and seek enforcement of the terms herein. It is acknowledged that the NDOC will oppose such a motion. Both parties acknowledge that it will ultimately be up to the judge to decide whether to reopen the case and retain jurisdiction for the purpose of enforcement. In the event the judge elects not to do so, and in the event more than two years have passed since the full execution of this Agreement, both parties

acknowledge that either party may bring an action for breach of contract in state court.

(ECF No. 199-1 at 7 (emphasis added).)

### B.    Analysis

Plaintiff outlines five chief complaints in an attempt to show that NDOC has failed to meet its obligations under the Settlement Agreement.[4] First, he states that he believes his RRT application is being opposed by Chaplain Stogner. (ECF No. 228 at 3-4.) Second, he claims that the new requirement relating to inmate-clergy volunteer communications is being hindered by staff. (*Id.* at 4-5.) Third, he claims that OP 722 has not been promulgated as promised or alternatively that it has been suppressed by Pauline Simmons, the law librarian. (*Id.* at 5.) Fourth, he claims that although the legal binders have been disseminated as required, the binders fail to achieve their purpose of being a "starter legal binder" as envisioned by the parties. (*Id.*) Finally, Plaintiff claims that Spanish AA meetings have not been implemented and have been actively obstructed from taking place by Chaplin Stogner as well as by other NNCC staff. (*Id.* at 5-6.) The Court will address each of Plaintiff's complaints below.

### 1.    RRT Application

The requirement relating to the RRT application specifically says that Q[uintero] may apply to the Religious Review Team (RRT) for a plot of land in the current designated outdoor religious site at NNCC for Catholics to conduct particular religious activities during approved yard times. (ECF No. 199-1 at 4-5.) In turn, Quintero is required to follow all RRT application rules. The parties further agreed that Warden Baca would not oppose the RRT application and that no other religious denomination's outdoor plot would be affected should the RRT grant the application. The last two

---

[4]This Court does its best to understand the factual bases for Plaintiff's motion but finds that Plaintiff's complaints regarding execution of the settlement agreement are merely conclusory and fail to allege specific facts that demonstrate an abject failure on the part of NDOC to execute the settlement agreement in good faith and with best efforts.

9

sentences of the section discussing NDOC's obligations to Quintero regarding the RRT Application provide further instructions to Quintero if the RRT is granted. (*See id.* at 5.)

Plaintiff offers no specific facts to demonstrate that NDOC has failed to meet this requirement. He does not allege that Warden Baca has opposed his RRT application; rather, his complaint stems from the fact the application has yet to be granted and Plaintiff's perception that Chaplain Stogner is the cause of the hindrance. Furthermore, the Settlement Agreement does not state that the RRT is required to grant Plaintiff's application.

### 2.     Inmate-Clergy Volunteer Communications

The requirement relating to inmate-clergy volunteer communications states that "letters to ordained clergy volunteers are deemed personal mail" and that they are therefore subject to AR 750. (ECF Nos. 228 at 18, 199-1 at 5.) Plaintiff asserts that it is his opinion that this provision has been "hindered, impeded and obstructed by prison official dissuasion during formal volunteer training." (ECF No. 228 at 4.) Plaintiff states that based on information and belief, no change in volunteer training has occurred. (*Id.* at 4, 5.) The Court is unsure of what Plaintiff's complaint is here — Plaintiff fails to articulate any specific facts that demonstrate NDOC is not permitting letters from prisoners to ordained clergy to be subject to the personal mail regulation. Rather, Plaintiff mentions something about conflating "clergy and non-clergy volunteers." As alleged, Plaintiff has not shown that Defendants have failed to comply with this requirement.

### 3.     Operational Procedure 722

The requirement relating to OP 722 in the Settlement Agreement states:

> OP 722 will be revised and implemented within thirty (30) days of the settlement conference, or on or before March 23, 2016, and this revision will provide for a new policy regarding inmate access to the law library. The policy will allow for a remedial measure in the event an inmate's initial request for law library materials is not filled by the inmate law clerks or the inmate law clerk's [sic] misunderstand the request; specifically, the policy will allow general population inmates to make an appointment to go to the law library, such that they may work in-person [sic] with the inmate law clerks or law librarians to obtain the legal materials they seek. It is

> anticipated that this policy will create a once-weekly time frame [sic] of one hour in which inmates may seek these appointments.

(ECF Nos. 228 at 18-19, 199-1 at 5-6.) Plaintiff alleges that either OP 722 has not been "promulgated as promised" or that law librarian Simmons is on her own or colluding with superior officers to suppress the new procedure. (ECF No. 228 at 5.) More specifically, Plaintiff claims that Simmons has been thwarting inmates' direct access to research computers. (*Id.*) However, the Settlement Agreement does not make this a requirement for NDOC. Rather, the Settlement Agreement provides that general population inmates may work with an inmate law clerk. There is no mention in the Settlement Agreement that prisoners need to be given direct access to research computers. Therefore, the Court fails to see how NDOC has abdicated its obligations under the Settlement Agreement.

### 4. Legal Binders

The requirement relating to the creation of legal binder states:

> Defendants agree to create eleven (11) identical binders, which will be disseminated throughout NNCC, with each unit bubble receiving a binder. The contents of these binders is [sic] listed in Addendum A to this Agreement. No later than May 23, 2016, OP 722 will be amended to refer to the existence of these binders and instruct inmates on the process for obtaining access to these binders. These binders will be created and disseminated to the unit bubbles on or before May 23, 2016. Prior to their dissemination, the Defendants will have a one-time meeting with QUINTERO to show him an example binder. Should QUINTERO feel documents as listed on the Addendum are missing he will so instruct Defendants, who will amend the binder to include the missing materials before its dissemination.

(ECF No. 228 at 6.) Plaintiff claims that the binders have been disseminated but that certain additional legal materials are necessary to make the binder "achieve its purpose of being a starter library." (*Id.* (internal quotation marks omitted).) However, nowhere in the Motion to Enforce or attached exhibits does Plaintiff assert that Defendants failed to create the binders or distribute them, or that they failed to show Plaintiff the list of materials for the binder or for Plaintiff to have an input in what materials were placed in the binders. Instead, the facts as alleged demonstrate that, in retrospect, Plaintiff thinks

11

additional information should be added to the binders. This is insufficient to show that Defendants have failed to comply with this provision of the Settlement Agreement.

### 5. Spanish AA meetings

In the Settlement Agreement, the portion relating to AA meetings states:

> Defendants agree to reinstate Alcoholics Anonymous (AA) meeting times in the Chapel schedule, such that AA meetings may now be held in both the chapel and the Structured Senior Living Program. There will be a scheduled AA meeting time for English participants and Spanish participants. However, both parties acknowledge that, for an AA meeting in any language to take place during the allotted chapel times, a non-inmate volunteer must be present to lead the meeting(s) or no AA meeting can take place.

(ECF Nos. 228 at 19-20, 199-1 at 6-7.) Plaintiff alleges that Chaplain Stogner and other staff have obstructed the implementation of this requirement. More specifically, in one exhibit attached to the Motion to Enforce, Plaintiff described meeting with Chaplain Stogner to discuss a Spanish AA meeting time at the chapel at which point Stogner "disclaimed any authority to schedule the AA meeting at the chapel." (ECF No. 228-1 at 26.) Neither the Motion to Enforce or the Settlement Agreement itself specify that Chaplain Stogner is solely responsible for setting the chapel schedule. Furthermore, Stogner denies that he has the authority to set the schedule. (ECF No. 233-1 at 2-3.)

Based on the facts as alleged, this Court does not find that NDOC has failed to fulfil its obligations regarding AA meeting times as required in the Settlement Agreement.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the pending motions.

The Court accepts and adopts the Magistrate Judge's Report and Recommendation (ECF No. 224). Plaintiff's motion to alter or amend (ECF No. 212), motion for transcripts from the settlement conferences (ECF No. 218), and motion for evidentiary hearing (ECF No. 219) are denied.

The Court also denies Plaintiff's motion to enforce the settlement agreement (ECF No. 228).

DATED THIS 27th day of January 2017.

_____
MIRANDA DU
UNITED STATES DISTRICT JUDGE